**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LAURA FARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 14-1377-KHV |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Laura Farmer appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1281-1383. For reasons set forth below, the Court finds that the final decision of the Commissioner should be reversed and remanded.

**I.   Procedural Background**

Plaintiff was born on February 17, 1980. On October 27, 2011, she applied for disability insurance benefits alleging a period of disability beginning September 16, 2011. She applied for supplemental security income the next day. Plaintiff alleged disability due to depression, anxiety, agoraphobia, fibromyalgia, chronic pain and chronic fatigue. Tr. 204. The agency denied her application initially and upon reconsideration. On June 11, 2013, following a hearing, an administrative law judge ("ALJ") found that plaintiff was not disabled as defined in the Social Security Act. On September 15, 2014, the Appeals Council denied plaintiff's request for review. The ALJ decision thus stands as the final decision of the Commissioner. Plaintiff appealed to this Court the final decision of the Commissioner.

## II.     **Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084.  Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).  Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## III.    **Frame Work For Analyzing Claim Of Disability**

Plaintiff bears the burden of proving disability under the Social Security Act. Wall, 561 F.3d at 1062.  Plaintiff is under a disability if she can establish that she has a severe physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844

F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines whether (1) claimant has engaged in substantial gainful activity since the alleged onset, (2) she has a severe impairment or combination of impairments and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(c), (d); see Williams, 844 F.2d at 750-51. If claimant satisfies steps one, two and three, she will automatically be found disabled. If claimant satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ makes specific findings of fact at three phases: (1) the individual's residual functioning capacity ("RFC"), (2) the physical and mental demands of prior jobs or occupations and (3) given her RFC, the individual's ability to return to the past occupation. Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). If claimant satisfies step four, the burden shifts to the Commissioner at step five to establish that she is capable of performing work in the national economy. Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005); see 20 C.F.R. § 404.1520(a)(5).

**IV.   Facts**

The following is a summary of the evidence presented to the ALJ.

    A.   Medical Evidence

        1.   Mental Health

Beginning in February of 2011, plaintiff sought counseling for anxiety, to improve relationships and for concerns about her parents' health. Tr. 337-59. After her father died in June of 2011, plaintiff complained of depression and anxiety.

In September of 2011, Robert Jacoby, M.D., wrote that he was treating plaintiff for severe

anxiety and depression and that she should remain off work until further notice. Tr. 380. A few weeks later, plaintiff reported that although she was not sure that she wanted to keep her job, "things were beginning to be more stable" Tr. 362. Dr. Jacoby urged plaintiff to get a psychiatric consultation. In December of 2011, Dr. Jacoby opined that plaintiff should be restricted from work-related activity until further notice because of anxiety and depression.

In February of 2012, Dr. Stanley Mintz, Ph.D., completed a consultative psychological examination of plaintiff, who related significant complaints about her physical and mental problems. Dr. Mintz found that plaintiff had normal speech, was fully oriented and could describe recent news events. She did not show any signs of hallucinations, delusions, bipolar symptoms, phobias, post-traumatic stress disorder or adult attention deficit disorder. Tr. 426. Plaintiff appeared to function within the average range of intelligence, had intact verbal abstraction skills, judgment, reasoning, memory, attention span and concentration. Dr. Mintz remarked that plaintiff's mental illness symptoms "may make it difficult for her to concentrate and focus on work, but . . . her symptoms do not preclude work functioning. . . . While [she] perhaps would have difficulty doing full-time sustained work . . . she most likely would be able to do more simple basic work." Dr. Mintz thought that plaintiff's capacity for work would improve if she resumed mental health treatment. He opined that plaintiff appeared able to understand simple and intermediate instructions and that her concentration capacity appeared "perhaps" limited by anxiety and depressive symptoms. Tr. 427.

In April of 2012, plaintiff saw Annette Norris, LCSW, for an intake examination. Norris noted that plaintiff had normal eye contact, psychomotor activity, speech, thought process and content. Tr. 444. She had an anxious mood but a full affect. Plaintiff had poor concentration and

judgment, but she was cooperative and fully oriented with intact memory, fair insight and abstraction skills and average intellectual ability. Tr. 445. Norris recommended individual therapy and a medication assessment. In May of 2012, nurse practitioner Arlene Long assessed plaintiff and found that she was cooperative and had normal eye contact, psychomotor activity and speech. Tr. 468-70. Long agreed with Norris' diagnostic impression and planned to continue plaintiff's medications. Tr. 472.

A few weeks later, Norris opined that plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted; interact appropriately with the general public; ask simple questions or request assistance; and respond appropriately to changes in the work setting. Tr. 489-90. Norris opined that plaintiff was extremely limited in her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 490.

On June 11, 2012, plaintiff told Long that she kept busy outside. Plaintiff was alert and oriented with good eye contact, normal motor functioning, appropriate affect and relaxed mood. Plaintiff had normal speech, thought process, good concentration and intact memory. She also had good insight and judgment, and displayed good intelligence. Neither Norris nor Long saw plaintiff again.

After June of 2012, plaintiff's primary care doctor, Patrick A. Raney, M.D., provided plaintiff anti-depressant and anxiety medication. In September of 2012, plaintiff told Dr. Raney that the medications were helping her depression and that she was "very active." Tr. 461.

In July of 2012, Robert H. Blum, Ph.D., a state agency psychologist, reviewed the evidence and assessed plaintiff's mental RFC. He concluded that plaintiff was "moderately limited" in her

ability to carry out detailed instructions, maintain concentration for extended periods and interact with the public. Dr. Blum found that plaintiff was capable of carrying out a simple routine and could work in jobs requiring only infrequent social interactions. Tr. 102-03.

### 2. Physical Health

Plaintiff has a history of joint pain, fatigue, headaches, paresthesias and muscle weakness. Tr. 310, 412. On April 6, 2010, she reported to Dr. Robert Jacoby that she was experiencing easy bruising as well as fatigue. She reported that fluoxetine helped her pain. By the end of April of 2010, plaintiff reported that her arthralgias and myalgias had been more symptomatic with her pain averaging a five or six on a scale of one to ten. She reported chronic headaches, back and neck pain, swelling in her joints, irritability and difficulty concentrating and focusing. Tr. 315-16. During this time period, Dr. Vijay Mhatre noted that plaintiff had multiple trigger and tender points as well as spasms and diminished range of motion in her cervical and lumbar spines, crepitus in both knees and tenderness in her knees and hips. Dr. Mhatre's impression was of generalized arthragias and myalgias suggestive of fibromyalgia. He prescribed tramadol and recommended strengthening and stretching exercises. Tr. 318. Plaintiff continued to report significant pain and insomnia. Tr. 312, 370-371.

On February 3, 2011, plaintiff reported to Dr. Jacoby a seven-year history of upper right abdominal pain that had worsened in the past two weeks. Tr. 369. On January 23, 2012, plaintiff went to the emergency room with abdominal pain. A week later she had a cholecystectomy.[1] Tr.

---

[1]   A cholecystectomy is a surgical procedure to remove the gall bladder, which is a pear-shaped organ that sits just below the liver on the upper right side of the abdomen. The gall bladder collects and stores bile, a digestive fluid produced in the liver. See www.mayoclinic.org/tests.../cholecystectomy/.

478-87.

On January 28, 2012, Dr. Aaron Rupp examined plaintiff. Plaintiff reported a history of fibromyalgia that caused sleep disturbance, morning stiffness and worsening symptoms with weather changes. Tr. 418. Plaintiff reported pain in her back, neck, elbows, hips, ankles and knees. Tr. 419-20. Dr. Rupp concluded that plaintiff had five paired trigger points which suggested fibromyalgia.

On March 19, 2012, plaintiff saw Dr. J. Douglas Gardner, a rheumatologist, for an evaluation. She reported worsening joint and muscle pain, particularly in her arms and legs and unrefreshed sleep and fatigue. She reported that tramadol provided some benefit but made her sleepy if she took it during the day. Tr. 434. Dr. Gardner noted multiple tender points consistent with fibromyalgia. He prescribed Celebrex and encouraged plaintiff to exercise. Tr. 436.

On May 22, 2012, plaintiff reported that Medicaid would not pay for Celebrex and that meloxicam only provided mild benefit. Plaintiff continued to have chronic aching, and Dr. Gardner started her on nabumetone. Tr. 476. She still experienced chronic musculoskeletal pain, fatigue, migraines, depression and anxiety. Tr. 453; 474-75. She reported continued right-sided abdominal pain, intermittent constipation and loose stools with "crampy" pain. On September 4, 2012, Dr. Patrick Raney opined that this could represent irritable bowel syndrome. Tr. 462. A month later, Dr. Raney diagnosed her with an ovarian cyst. Tr. 458.

B.     Plaintiff's Testimony

Plaintiff testified as follows.

She feels that she is unable to work due to pain, severe anxiety and depression. She has constant pain in most of her joints, including her back, hips, shoulders, ankles, knees, elbows and wrists. Despite pain medication and exercise, on an average day plaintiff's pain is at a level of six

on a scale of one to ten. Her pain causes difficulty with sitting or standing for long periods, lifting, bending, twisting, pushing and pulling. Tr. 42. Her medications cause sleepiness and dehydration.

Plaintiff takes medication for anxiety but still has three to five anxiety attacks a week during which her heart races, she gets short of breath, feels overwhelmed and is unable to think clearly. Crowds trigger her anxiety, and she is unable to shop for groceries by herself. Tr. 47. She has difficulty concentrating and working with others. Tr. 48.

Plaintiff does light housework including loading and unloading the dishwasher, cooking meals and sorting the laundry; her husband and daughter help her with these tasks when she is in too much pain. Tr. 49-50. Plaintiff avoids driving because it exacerbates her pain and sometimes causes anxiety attacks. Tr. 38.

C.   Vocational Expert Testimony

The ALJ proposed the following hypothetical individual to the vocational expert:

> Assume . . . an individual with the same age, educational background as claimant, with the same work history. [A]ssume this individual retains the capacity to perform a full range of light work, in that she can lift and carry 20 pounds occasionally, 10 pounds frequently, walk or stand six of eight hours, sit for six of eight hours. [Assume] nonexertional limitations that would allow her to do simple tasks, but limit her to jobs that do not demand attention to details or complicated instructions or job tasks. She should have only occasional cooperation interaction with the general public. For these purposes, assume that she retains the ability to maintain attention and concentration for minimal two-hour periods at a time, adapt to changes in the workplace on a basic level.

Tr. 53-54. The vocational expert testified that such an individual could not return to her past relevant work but could perform other jobs in the light, unskilled category including racker, garment sorter, or bindery-machine feeder.

The ALJ then proposed a second hypothetical with the additional limitations that due to psychologically-based symptoms, she would be unable to interact and cooperate with co-workers,

-8-

unable to interact and cooperate with the general public, unable to maintain attention and concentration for two-hour periods, unable to adapt to changes in the workplace and unable to accept supervision. The vocational expert testified that an individual with such limitations would not be able to do any jobs in the economy. Tr. 54-55.

The ALJ proposed a third hypothetical with the additional limitations of sedentary work, lift and carry ten pounds occasionally and frequently walk or stand two hours out of an eight- hour day, but only sit or stand for 15 minutes at a time. The vocational expert testified that an individual with such limitations would not be able to do any jobs in the economy. Tr. 55.

### V.    ALJ Findings

In his order of June 11, 2013, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since September 16, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: fibromyalgia, dysthymia, anxiety/panic disorder and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours out of an eight-hour workday with normal breaks and sit for six hours out of an eight-hour workday with normal breaks) as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to simple tasks that do not demand attention to details or complicated job tasks or instructions. She is limited to occasional interaction and cooperation with the public. She retains the ability to maintain attention and concentration for a minimum of two-hour periods at a time and adapt to changes in

the workplace on a basic level.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 17, 1980 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as define in the Social Security Act, from September 16, 2011 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 14-24.

## VI. <u>Analysis</u>

Plaintiff asserts that ALJ erred in formulating her RFC because (1) he gave significant weight to Dr. Blum's opinion but did not explain why he excluded some of Dr. Blum's mental functioning limitations; (2) he did not provide an adequate narrative statement describing how he formulated plaintiff's physical RFC and (3) he did not weigh an employer's questionnaire.

  A. <u>Mental Functioning</u>

The record contains three opinions concerning plaintiff's mental functioning. Dr. Blum, a psychological consultant, opined that plaintiff was moderately limited in her ability to (1) carry out

detailed instructions, (2) maintain attention and concentration for extended periods and (3) interact appropriately with the general public. Tr. 102. The consultative examiner, Dr. Mintz, opined that plaintiff's psychological symptoms would make it hard for her to concentrate and focus on work and that she would have difficulty doing full-time sustained work. Tr. 427. Annette Norris, LCSW, opined that plaintiff had moderate to marked limitations in sustained concentration and persistence, moderate to extreme limitations in social interaction and moderate to marked limitations in the ability to adapt. Tr. 489-490.

The ALJ gave significant weight to the opinion of Dr. Blum, the non-examining State agency doctor. Tr. 23. The ALJ gave no weight to Dr. Mintz's opinion that plaintiff would have difficulty doing full-time, sustained work, but gave significant weight to Dr. Mintz's opinion that plaintiff was capable of understanding simple and intermediate instructions. The ALJ gave no weight to the Norris opinion because she had only counseled plaintiff a short time.

Plaintiff argues that the Court must remand for further findings because although the ALJ gave Dr. Blum's opinion significant weight, he did not explain why he did not include all of Dr. Blum's limitations in the RFC.[2] In particular, although the ALJ stated that he gave significant

---

[2] Defendant argues that because Dr. Blum's moderate limitation was contained in Section I of the Mental Residual Functional Capacity Assessment ("MRFCA") form and not in Section III of the form, the ALJ was not required to include the limitation in the RFC assessment. Defendant's Response (Doc. #13) at 11. Defendant cites the agency's Program Operations Manual System ("POMS") DI § 24510.060 and Sullivan v. Colvin, No. 12- 5147, 2013 WL 950970, at *3 (10th Cir. Mar. 13, 2013).

Plaintiff responds that an ALJ cannot ignore moderate Section I limitations, citing Carver v. Colvin, No. 14-5056, 600 F. App'x 616, 619-20 (10th Cir. Jan. 20, 2015) (unpublished). In Carver, the Tenth Circuit stated that "the limitations set out in Section I must be described in narrative format in Section III [of the MRFCA]." Id. (citing POMS DI § 24510.063 B.2). When a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on claimant's ability, or if it contradicts limitations marked in Section I, the

(continued...)

weight to Dr. Blum's opinion that plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods, the ALJ concluded that she retained the ability to maintain attention and concentration for a minimum of a two-hour period. Tr. 17. Plaintiff points out that the ALJ decision does not explain how he harmonized the findings regarding her limited ability to maintain attention and concentration for extended periods with the RFC which included no limitation in the ability to maintain attention and concentration for two-hour periods.

The Tenth Circuit addressed a similar situation in Martinez v. Astrue, 422 F. App'x 719, 724-725 (10th Cir. Apr. 26, 2011). In Martinez, the ALJ stated that he gave great weight to a consultative examiner's opinion, but then ignored parts of the opinion which questioned claimant's ability to be reliable and interact socially. Id. The Tenth Circuit noted that the ALJ may have had reasons for disregarding portions of the opinion, but found that he was required to discuss why he ignored this evidence. Id. The Tenth Circuit remanded for further proceedings. Similarly, the ALJ in this case should have discussed why he did not include Dr. Blum's opinion regarding plaintiff's ability to maintain attention and concentration for extended periods. Moreover, the ALJ's failure to include Dr. Blum's limitation regarding plaintiff's ability to maintain attention and concentration is material. See Program Operations Manual DI § 25020.010 B.2.a (*any* job requires ability to maintain concentration and attention for extended periods, i.e. two-hour segments between arrival and first break, lunch, second break and departure.). Further, Dr. Mintz and Norris also noted

---

²(...continued)
Court cannot properly consider the MRFCA as part of the substantial evidence supporting the RFC finding. Id. Here, the ALJ cannot rely on Dr. Blum's Section III narrative because it did not address the Section I limitations – including a moderate limitation in the ability to maintain attention and concentration for two-hour periods. See Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007) (ALJ should explain why he rejects some limitations contained in RFC assessment while accepting others).

-12-

limitations in plaintiff's ability to maintain attention and concentration. Tr. 427, 489. These findings support Dr. Blum's conclusion that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods. After giving Dr. Blum's opinion significant weight, the ALJ should have either included a limitation in plaintiff's ability to maintain attention and concentration for extended periods or explained why he deviated from Dr. Blum's opinion. Failure to do so requires remand. Mann v. Colvin, No. 12-4056-SAC, 2013 WL 4549231, at *6-7 (D. Kan. Aug. 28, 2013) (remanding where ALJ gave significant weight to State agency opinion finding moderate limitation in ability to maintain attention and concentration for extended periods, but found that claimant could maintain attention and concentration for two-hour period).

B.   Physical Functioning

The ALJ concluded that plaintiff retained the ability to perform light work despite a severe impairment of fibromyalgia. Tr. 14, 17. Plaintiff asserts that the ALJ failed to provide a narrative statement describing how he formulated her physical RFC. See Sowers v. Astrue, No. 11-1306-SAC, 2013 WL 172866, at *3 (D. Kan. Jan. 16, 2013) (RFC findings must be supported by substantial evidence in record).

In concluding that plaintiff could perform light work, the ALJ gave significant weight to Dr. Rupp's objective examination, which found no functional limitations.[3] Symptoms of fibromyalgia are subjective, however, so the absence of an objective medical test does not preclude a finding that claimant suffers from a potentially disabling condition. See Wulf v. Astrue, 773 F. Supp.2d 984, 988-89 (D. Kan. Jan. 26, 2011). Plaintiff notes that her treating physician, Dr.

---

[3]   Dr. Rupp's examination revealed tender points and he diagnosed arthralgias and a history of fibromyalgia. Tr. 421. However, Dr. Rupp provided no further opinion of plaintiff's functioning.

Gardner, a rheumatologist, documented tender points as well as chronic musculoskeletal pain and problems sleeping. Tr. 474-75. Additionally, in February of 2013, plaintiff reported that she "always" felt fatigued. Tr. 453. Plaintiff argues that in determining her physical RFC, the ALJ did not address her complaints of fatigue or sleep disturbance. See Anderson v. Apfel, 100 F. Supp.2d 1278, 1290 (D. Kan. 2000) (problems with sleep disturbance and fatigue associated with fibromyalgia can be disabling); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999) (pain associated with fibromyalgia can be disabling). Further, while the ALJ relied on the fact that plaintiff participated in a regular exercise program, the ability to participate in an exercise program – a recommended treatment for fibromyalgia – does not necessarily mean that she is capable of light work. See Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. Jan. 14, 2004) (citing Brosnahan v. Barnhart, 336 F.3d 671, 672 (8th Cir. 2003)) (RFC for light work represents what claimant is able to do on regular and continuing basis, i.e. eight hours a day for five days a week).

The Court's review of the entire record, however, supports the ALJ findings as to plaintiff's physical RFC. Specifically, none of plaintiff's treating doctors assigned or recommended any physical restrictions or limitations on her ability to work. Moreover, the ALJ explicitly considered plaintiff's reports that medication helped her symptoms. Tr. 19, see Tr. 361, 474, 476; White v. Barnhart, 287 F.3d 903, 909-10 (10th Cir. 2001) (claimant's admission that medication relieved some pain supported finding that impairments were not disabling). The Court finds that the ALJ's physical RFC findings are supported by substantial evidence.

  C. Employer Questionnaire

Plaintiff asserts that the ALJ erred by not considering an employer questionnaire which indicated that she had difficulty accepting instructions and criticism, had some difficulty working

with co-workers and had great difficulty with acceptable attendance.[4] See Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006) (failure to mention uncontroverted third-party testimony that corroborates medical evidence requires remand).  The Commissioner points out that although the ALJ did not specifically mention the questionnaire, he stated that he had considered all of the evidence in the record.  Tr. 14, 17.  The Tenth Circuit has stated that it generally "take[s] a lower tribunal at its word when it declares that it has considered a matter."  See Flaherty, 515 F.3d at 1071.  Plaintiff notes, however, that this Court has found that remand is necessary when an ALJ fails to mention the statements of former employers when the statements are uncontroverted and are supported by medical opinions.  Irby v. Colvin, No. 12-1412-SAC, 2014 WL 631508, at *5 (D. Kan. Feb. 18, 2014).  Here, on remand the ALJ should make clear whether he has specifically considered the employer questionnaire.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** for further proceedings in accordance with this memorandum and order.

Dated this 8th day of August, 2016, at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge

---

[4]  Ms. Engles, Kansas Department of Revenue employee, completed the questionnaire.